UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Levonne Jomario Greer,

     Petitioner,               Civil No. 18-12143

                                   Stephanie Dawkins Davis
v.                            United States District Judge

Daniel Lesatz,

     Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, DENYING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS* AND <u>DENYING MOTION FOR ORAL ARGUMENT (ECF No. 21)</u>**

Levonne Jomario Greer, ("Petitioner"), confined at the Baraga Correctional Facility in Baraga, Michigan, through his attorney Dana B. Carron, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316a, conspiracy to commit first-degree premeditated murder, Mich. Comp. Laws § 750.157a, eight counts of felony-firearm, Mich. Comp. Laws § 750.227b, five counts of assault with intent to commit murder, Mich.

1

Comp. Laws § 750.83, and one count each of carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227, carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226, and discharging a firearm from a vehicle, Mich. Comp. Laws § 750.23a.

For the reasons that follow, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.  Further, the court finds that oral argument is not necessary in this matter and **DENIES** petitioner's motion for oral argument.  (ECF No. 21); *see* Local Rule 7.1(f)(1) ("The court will not hold a hearing on a motion for rehearing or reconsideration, a motion for reduction of sentence, or a motion in a civil case where a person is in custody unless the judge orders a hearing.").

## I.    BACKGROUND

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

This case arises out of a shooting that resulted in the death of six-year-old Layla Jones. Jones was shot as she prepared to get into the back seat of her grandmother's car after spending the evening with friends and family at her aunt's house at 1115 Essling Street in Saginaw. She died shortly thereafter at a local hospital emergency room.

Defendant, Rico Saldana, Julian Ruiz, and Michael Lawrence spent the day of August 29, 2012 drinking rum and smoking marijuana at Saldana's house on Harold Street in Saginaw. At some point, they learned that Bobby Bailey, one of defendant's childhood friends, had been murdered earlier that day. Apparently another of defendant's friends, Chris Diggs, had been killed two years earlier. Saldana asked Ruiz to see if he could borrow his sister's Buick Skylark. After Ruiz picked up the car, he followed Saldana and defendant to a house on 19th Street, where Saldana parked the Dodge Avenger he was driving. The four men then got into the Skylark, with Saldana driving, defendant in the seat behind him, Ruiz next to defendant in the backseat, and Lawrence next to Saldana in the front passenger's seat. Defendant had a .40 caliber gun and Lawrence a .45 caliber gun.

After turning onto Essling Street, when one of the men in the car said, "there go somebody" Lawrence then reached across Saldana, who slowed the car to a roll as it approached the bottom of the driveway at 1115 Essling Street, and began firing out of the driver's side front window. Defendant fired out of the driver's side back window. The two men fired approximately 12 shots before Saldana accelerated down Essling. Ruiz testified that the Skylark was shot

at.  Although he was not certain if Lawrence and defendant shot before the Skylark was fired upon, he thought the latter was return fire as the Skylark accelerated down the street.  Layla Jones was fatally injured.

After leaving the scene of the shooting, Saldana drove back to 19th Street, where he and defendant got back into the Avenger, and Ruiz and Lawrence drove the Skylark back to Saldana's house.  Ruiz and Lawrence collected three shell casings from inside the Skylark and threw them into the sewer in front of Saldana's house.  Later that evening, after Ruiz had returned the Skylark to his sister, defendant spoke with him on the telephone to make sure he had cleaned the car; when he said that he had not, defendant told him to clean the car with baby wipes.  The next day, Saldana gave Ruiz a can of disinfectant and told him to use it to clean the car.  Ruiz hid the disinfectant and towel he used in a doghouse behind his house.

Two days after the shooting, police arrested defendant and Saldana at a motel.  Later that night, in a videotaped interview with Saginaw Police Department Detective Andrew Carlson, defendant confessed to his involvement in the shooting.  The videotape of defendant's interview was played for the jury.  The videotape also included several telephone conversations between defendant and his girlfriend and family members during which he admitted that he shot Layla Jones.

*People v. Greer*, No. 318286, 2015 WL 302684, at \*1-2 (Mich. Ct. App. Jan. 22, 2015).  The Michigan Supreme Court denied petitioner leave to appeal.  *People v. Greer* 498 Mich. 855, 864 N.W.2d 576 (2015).

Petitioner filed a motion for relief from judgment which was denied.  *People v. Greer*, 12-037967-FC-5 (Saginaw Circuit Court March 21, 2017).  The Michigan appellate courts denied petitioner leave to appeal.  *People v. Greer,* No. 339442 (Mich. Ct. App. Jan. 25, 2018); *lv. den.* 503 Mich. 885, 919 N.W. 2d 250 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.      Petitioner Greer was denied his Constitutional right to due process when the trial court abused its discretion when it denied trial counsel's request for a voluntary manslaughter instruction, where the evidence at trial was  insufficient to convict of greater than voluntary manslaughter.

II.     Admission of Levonne Greer's statement to Detective Carlson violated his Fourteenth Amendment right to due process because it was involuntary.

III.    Petitioner Greer received ineffective assistance of appellate counsel on his direct appeal of right and therefore has good cause for failure to raise issues IV and V below, on his direct appeal of right, excusing procedural default.

IV.     Petitioner Greer was deprived of his right to be tried before a neutral and impartial decision-maker where the trial court judge at the direction of the prosecution endorsed and validated the purported witness identification of defendant-petitioner.

5

V.    Petitioner Greer was constructively deprived of the Sixth
      Amendment right to counsel by counsel's complete failure to
      investigate and interview a single prosecution witness before
      trial.

## II.    STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), imposes the following

standard of review for habeas cases:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was
> > contrary to, or involved an unreasonable
> > application of, clearly established Federal
> > law, as determined by the Supreme Court
> > of the United States; or
> >
> > (2) resulted in a decision that was based
> > on an unreasonable determination of the
> > facts in light of the evidence presented in
> > the State court proceeding.

A decision of a state court is "contrary to" clearly established

federal law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court on a question of law or if the state court

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

7

correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664

(2004)).  Therefore, in order to obtain habeas relief in federal court, a

state prisoner is required to show that the state court's rejection of his

claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington*, 562 U.S. at 103.  A habeas

petitioner should be denied relief as long as it is within the "realm of

possibility" that fairminded jurists could find the state court decision to

be reasonable.  *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III.  DISCUSSION

### A.    The Lesser Included Instruction Claim

Petitioner contends that the trial court erred in refusing to

instruct the jurors on the lesser included offense of voluntary

manslaughter.

The United States Supreme Court has declined to determine

whether the Due Process Clause requires that a state trial court

instruct a jury on a lesser included offense in a non-capital case.  *See*

*Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (citing to

8

*Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)); *see also Jackson v. Trierweiler*, 2021 WL 308112, at \*13 (E.D. Mich. Jan. 29, 2021) ("The Sixth Circuit has also confirmed that first-degree murder is a non-capital offense in Michigan.") (citing *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Tegeler v. Renico*, 253 Fed. Appx. 521, 524-25 (6th Cir. 2007) (due process did not require jury instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated murder case where petitioner received a non-parolable life sentence).

Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.*; *see also David v. Lavinge,* 190 F.Supp.2d 974, 986, n. 4 (E.D. Mich. 2002). *Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F.3d 531, 541 (6th Cir. 2001). The failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not generally an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). Instead, Petitioner must

9

show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991), (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id*. Petitioner has not met this burden and therefore is not entitled to habeas relief on his claim that the trial court failed to give an instruction on the lesser included offense of manslaughter.

    B.   <u>The Involuntary Confession Claim</u>

Petitioner alleges that his confession to Detective Carlson should have been suppressed by the trial court. Petitioner argues that the statement was involuntary because he was induced into making the statement after the detective promised him leniency if he confessed.

The Michigan Court of Appeals rejected petitioner's claim:

> The test of voluntariness is whether, considering the totality of the circumstances, "the confession

10

is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired" *People v. Cipriano,* 431 Mich. 315, 334; 429 NW2d 781 (1988) (internal quotation marks and citation omitted).  Factors to be considered include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id.*]

We conclude from our review of the totality of the circumstances, in light of the *Cipriano* factors, that defendant's confession was voluntary. At the time he made the challenged statements, defendant was 22 years old, of at least average intelligence, and, by his own admission, experienced with the police. After being apprised of his *Miranda* rights, defendant voluntarily

waived them, and although the interview lasted over three hours, the length was not per se unreasonable. There is no evidence he was injured, intoxicated, drugged, or in ill health. He had something to eat at the police station prior to the interview, was not denied sleep or medical attention, and at no time was he physically abused or threatened with abuse. The record simply does not support the conclusion that defendant's will was overborne or his capacity for self-determination critically impaired. See *id.*

It is true that some of the statements Detective Carlson made could be interpreted as promises of leniency, suggesting defendant would achieve a more favorable outcome if he cooperated than otherwise. That defendant hoped for the detective's help is indisputable; that he confessed in reliance on it is not. Detective Carlson made no specific promises regarding charges or sentencing. For these reasons, we conclude that defendant's confession was voluntary, and affirm the trial court's admission of the taped confession into evidence.

*People v. Greer*, No. 318286, 2015 WL 302684, at *2-3 (Mich. Ct. App. Jan. 22, 2015) (internal footnote omitted).

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-307 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be

condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, no less than physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

When determining whether a confession is voluntary, the pertinent question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

> 1. police coercion (a "crucial element");
> 2. the length of interrogation;
> 3. the location of interrogation;
> 4. the continuity of the interrogation;
> 5. the suspect's maturity;
> 6. the suspect's education;
> 7. the suspect's physical condition and mental health;
> 8. and whether the suspect was advised of his *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in a defendant making a statement to the police should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, a confession should not be deemed involuntary in the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986).

A confession, in order to be deemed voluntary, cannot be the result of any direct or implied promises, however slight. *See Shotwell Mfg. Co. v. U.S.,* 371 U.S. 341, 347 (1963). Police promises of leniency and threats of prosecution can be objectively coercive, as required for a finding that a confession was involuntary due to police coercion. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003). However, contrary to petitioner's argument, courts have applied a totality of circumstances test in determining whether a police officer's promises of leniency made the defendant's confession involuntary. *See Holland v. Rivard*, 800 F.3d 224, 241-42 (6th Cir. 2015); *Loza v. Mitchell*, 766 F.3d 466, 478-80 (6th Cir. 2014); *Simpson v. Jackson*, 615 F.3d 421, 433-34 (6th Cir. 2010), *judgment vacated sub nom. Sheets v. Simpson on other grds*, 565 U.S. 1232 (2012). A police officer's promise of leniency is but one factor.

14

The Michigan Court of Appeals reasonably determined from the totality of the circumstances that petitioner's statements were voluntary and admissible.  There is no indication that petitioner was hungry, sick, tired, or under the influence of alcohol or drugs. Petitioner does not allege that he was threatened or intimidated by the police.  Petitioner was advised of his *Miranda* rights, prior to the interview.  When Detective Carlson indicated that he could assist petitioner in getting a favorable plea offer, he confessed to the murder. Under the circumstances, it was reasonable to conclude that the confession was voluntary.  *See e.g.*, *United States v. LeBrun*, 363 F.3d 715, 724-26 (8th Cir. 2004) (confession was not compelled, even though officers used psychological pressure to facilitate a confession and defendant viewed their statements as a promise he would not be prosecuted, where defendant confessed after only 33 minutes of questioning, officers were not armed and never shouted at defendant or physically threatened him, defendant had a subjective understanding of his *Miranda* rights, and he was an educated individual with legal training).  *See also United States v. Charlton*, 737 Fed. Appx. 257, 261 (6th Cir. 2018) (Police officers' conduct in offering to help defendant if

15

they could and to try to protect his family were not objectively coercive, and thus could not have rendered defendant's confession to numerous drug and firearms crimes involuntary, where officers' offers of help were non-committal and did not force him to confess nor threaten him if he did not confess).

Moreover, assuming that petitioner's confession to the police should have been suppressed, petitioner is unable to establish that he is entitled to habeas relief in light of the fact that admission of the statements against him at trial was harmless error at most.

Harmless-error analysis applies to coerced or involuntary confessions. *Arizona v. Fulminante*, 499 U.S. at 295.  In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

The record reflects that petitioner and three other men drove to Essling Street after finding out that Bobby Bailey had been killed.

16

(ECF 15-9, PageID.411).  Julian Ruiz testified that he borrowed his sister's car.  (ECF 15-9, PageID.402).  Ruiz, Rico Saldana, Michael Lawrence, and petitioner got into the car and then the men drove to the Essling location.  (*Id*. at 403).  Lawrence was armed with either a .44- or a .45-caliber semi-automatic pistol, and petitioner was armed with a .40-caliber semiautomatic.  (*Id*. at 405, 410).  Ruiz testified that he saw Lawrence and petitioner stick their guns out of the car windows and fire at the crowd.  (*Id*. at 404).  Afterwards, Ruiz took the shell casings found in the car and threw them in the sewer in front of Saldana's house.  (*Id*. at 406).  He was also told to wipe the car down with baby wipes.  (*Id*. at 405).  The next morning, Ruiz used a burgundy towel and disinfectant to wipe down the car's interior and hid the towel and disinfectant in a doghouse in his backyard.  (*Id*. at 406).  Ruiz's testimony was corroborated by other testimony and evidence.  Marlena Ruiz testified her brother, Julian Ruiz, borrowed her car the night of the shooting and returned it with a bullet hole.  (*Id*. at 395, 397).  The fired cartridge cases found at the scene had been fired from .45 and .40-caliber firearms.  (ECF 15-8, PageID.360).  Detective Murphy testified that he saw Julian Ruiz wiping down the car with the burgundy towel.

17

(ECF 15-9, PageID.413-414).  Finally, Detective Grigg testified that he recovered the shell casings from the sewer.  (*Id.* at 432, 434).

Petitioner's actions both before and after the shooting, bringing a semi-automatic to the Essling location, as well as the use of a .40 caliber firearm, supports a finding of intent to kill.  In addition to the videotaped interview, numerous witnesses, including another defendant in the car, testified at petitioner's trial.  Finally, the prosecutor presented recordings of several telephone calls that petitioner made to relatives, in which he admitted to his involvement in the shooting.

In light of the overwhelming evidence of guilt, the admission of petitioner's confession did not have a substantial or injurious influence or effect on the verdict.  Petitioner is not entitled to relief on his second claim.

C.    Claims ## 3, 4, and 5.  The defaulted claims.

Petitioner brings three additional claims that were initially raised in his motion for relief from judgment.  Respondent contends that the remaining claims are barred by the statute of limitations and are also procedurally defaulted for failing to raise these claims in his direct appeal.

18

Respondent says that petitioner's remaining claims are time-barred because petitioner filed his amended petition including these claims after the one-year limitations had expired. Petitioner, however, through his attorney, David Moffitt, filed a second habeas petition at the same time as he filed his initial petition in this case, in which he raised these additional claims. Judge Drain dismissed the petition as duplicative of this one. *See Greer v. LeSatz,* No. 2:18-CV-12165 (E.D. Mich. Jan. 17, 2019). It thus appears that petitioner did attempt to file these three claims in a timely manner. Regardless, the statute of limitations does not constitute a jurisdictional bar to habeas review. A federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F.3d 426, 429, n. 2 (6th Cir. 2006). Accordingly, the court will proceed to the merits of the parties' remaining arguments.

Respondent contends that petitioner's third through fifth claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Mich. Ct. R. 6.508(D)(3).

19

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v.*

20

*Greer*, 503 Mich. 885, 919 N.W.2d 250 (2018).  The Michigan Court of

Appeals denied petitioner's post-conviction appeal in a form order

"because the defendant failed to establish that the trial court erred in

denying the motion for relief from judgment."  *People v. Greer*, No.

339442 (Mich. Ct. App. Jan. 25, 2018).  These orders, however, did not

refer to subsection (D)(3) nor did they mention petitioner's failure to

raise his claims in his direct appeal as their rationale for rejecting his

post-conviction appeals.  Because the form orders in this case are

ambiguous as to whether they refer to procedural default or a denial of

post-conviction relief on the merits, the orders are unexplained.  *See*

*Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must

"therefore look to the last reasoned state court opinion to determine the

basis for the state court's rejection" of petitioner's claims.  *Id.*

The Saginaw County Circuit Court judge in rejecting petitioner's

post-conviction claims, indicated that petitioner was not entitled to

relief on his claims because he failed to show cause and prejudice for

failing to raise the issues on his direct appeal.  *See People v. Greer*, No.

12-037967-FC-5, *6.[1]  Because the trial court judge denied petitioner

---

[1]  The judge's opinion can be found at ECF 15-5, PageID.224-229.

post-conviction relief based on the procedural grounds stated in Mich.

Ct. R. 6.508(D)(3), petitioner's claims are procedurally defaulted

pursuant to Mich. Ct. R. 6.508(D)(3).  *See Ivory v. Jackson,* 509 F.3d

284, 292-93 (6th Cir. 2007).[2]

With respect to his post-conviction claims, petitioner alleges

ineffective assistance of appellate counsel as cause to excuse his

procedural default.  Petitioner, however, has not shown that appellate

counsel was ineffective.  It is well-established that a criminal defendant

does not have a constitutional right to have appellate counsel raise

every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745,

751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable
> professional judgments and impose on appointed
> counsel a duty to raise every 'colorable' claim
> suggested by a client would disserve the ... goal
> of vigorous and effective advocacy.... Nothing in
> the Constitution or our interpretation of that
> document requires such a standard."

*Id.* at 463 U.S. at 754.

―――――――――――――――――

[2] Petitioner could not have procedurally defaulted his ineffective assistance
of appellate counsel claim, because state post-conviction review was the first
opportunity that he had to raise this claim.  *See Guilmette,* 624 F.3d at 291.
However, for the reasons stated below, petitioner is not entitled to habeas relief on
this claim.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington*, 466 U.S. 668 (1984] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and

23

prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a 29-page appellate brief which raised three claims, including the involuntary confession claim that petitioner has presented as the second claim in his petition.[5] Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for a writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner

---

[5] *See* Defendant-Appellant's Brief on Appeal, ECF 18-19 PageID.1066-1094.

has failed to establish cause for his procedural default of failing to raise these claims on direct review.  *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

More importantly, this Court notes that in addition to the appellate brief filed by appellate counsel, petitioner filed a supplemental Standard 4 *pro per* brief on his appeal of right before the Michigan Court of Appeals.[3]  Although petitioner raised several claims, he did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment. Petitioner took advantage of the opportunity pursuant to the Michigan

---

[3]  *See* Appellant's Supplemental Brief, ECF 18-19 PageID.1172-95. Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions."  *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his third, fourth, or fifth claims in his supplemental brief.

Petitioner has offered this Court no explanation as to why he failed to raise these claims in his supplemental *pro per* brief that he filed as part of his direct appeal.  Because petitioner has offered no reasons for his failure to include these claims in his supplemental *pro per* brief on his direct appeal, he has failed to establish cause to excuse the default of these claims.  *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

In the present case, petitioner has failed to show cause to excuse his default.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue.  *Smith v. Murray*, 477 U.S. at 533.  Additionally,

26

petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default.  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review the procedurally defaulted claims on the merits.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999).

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice.  *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007).  For the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for a writ of habeas corpus, petitioner has failed to show that his post-conviction claims have any merit.  Petitioner is not entitled to habeas relief on his remaining claims.

27

## IV.  CONCLUSION

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner

28

states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

29

## V.   ORDER

Based on the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

**IT IS FURTHER ORDERED** that Petitioner's motion for oral argument is **DENIED**.

Dated: March 18, 2021                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States District Judge